AKIN, County Supt., v. HARRIS.

No. 18852.   Opinion Filed April 30, 1929.

Rehearing Denied Sept. 10, 1929.

R. K. Robertson, for plaintiff in error.

Glenn O. Young, for defendant in error.

REID, C. Oliver H. Akin, plaintiff in error, was the county superintendent of public instruction of Creek county, and the defendant in error, Mark Harris, was director of a school district in said county. They will be referred to herein as superintendent and director. Certain parties, alleging themselves to be resident taxpayers and patrons of said school district, filed with the superintendent a complaint in writing alleging that the director had failed and refused to perform the duties of his office in certain particulars, and requested his removal. The matter was set for hearing by the superintendent and notice given to the director. It appears that both the director and the complainants were represented by counsel at the hearing. Objection was made by the director to the jurisdiction of the superintendent to hear the charges. This was overruled and the hearing proceeded. At the conclusion the superintendent made an order finding that the director had failed and refused to perform the duties enjoined upon him by the statutes of the state of Oklahoma, and had not given any time or attention whatever to his duties as such director; and further found that he had not complied with the duties enjoined upon him by section 10372, C. O. S. 1921, whereupon an order was entered removing the director and appointing his successor. These facts appear from the return on the writ of certiorari which was issued as hereinafter shown.

An action was then brought in the district court by the director against the superintendent to review by certiorari the proceedings by which he was removed. The matter was heard in the district court upon the director's petition for the writ and the return of the superintendent showing all the proceedings had before him, including the evidence submitted. And the statement of the court at the conclusion of the trial shows that the only question there tried and determined was whether the superintendent had jurisdiction under the Constitution and statutes to hear a proceeding to remove a school director. This is also reflected by that part of the journal entry made in the case as follows:

"It is the opinion of the court that the county superintendent of public instruction of Creek county, Okla., was without jurisdiction to remove the said Mark Harris, school director of school District No. 8, and that no authority to remove the said Mark Harris or to declare his office vacant exists or rests with the county superintendent of public instruction of Creek county, Okla., under the Constitution and the laws of the state of Oklahoma; that Mark Harris, being a public official, could only be removed under the general removal statutes of Oklahoma, to wit, by grand jury acquisition or by action under the Attorney General's bill, as provided for in the general laws of the state of Oklahoma, and that no authority is given under the Constitution and Statutes to the county superintendent of public instruction to remove the said Mark Harris, or to declare his office vacant.

"It is, therefore, ordered,, adjudged and decreed by the court that the said writ and certiorari herein issued is by this court sustained; to which action of the court the said defendant, Oliver H. Akin, county superintendent of public instruction, objects, and excepts; which exceptions are by the court allowed."

There seems but one question for us to decide in this case, and that is the question passed on by the trial court, which is, Did the county superintendent attempt to exercise and execute a power not given him under the Constitution and laws of this state?

Counsel each discuss three cases which have come to this court incidentally involving this question, but, in our judgment, in none of these cases is the exact question squarely presented and decided.

In the case of Kiefer v. Peters, 92 Okla. 30, 217 Pac. 469, an action for mandamus was brought by Kiefer, a member of the school board, against the county superintendent, to compel her to certify her disqualification to hear a proceeding brought under

section 10353, supra, to remove him as such member. The trial court denied the writ and this court on appeal affirmed the judgment holding that our statutes did not provide for disqualifying the county superintendent for the reasons alleged in the petition for the writ, which were that the superintendent was biased and prejudiced against the member.

It will be seen that the only question presented in that case was whether the district court by mandamus had the power to compel the superintendent to disqualify from hearing the proceedings to remove the officer, and that it seems to have been assumed by both parties to the controversy that the superintendent had jurisdiction to remove the school officer under section 10353, supra.

In the case of Schaeffer v. Jackson, 106 Okla. 194, 225 Pac. 961, the plaintiff sought by mandamus to compel the defendant to deliver to him the books, papers, seal and paraphernalia of a consolidated school district, alleging that the defendant had been clerk of said district and had been removed from said office by the county superintendent —apparently under authority of section 10353, supra,—and that he, plaintiff, had thereafter been appointed clerk of said district, and defendant had refused to deliver to him the items belonging to said district which he as clerk was entitled to have in his possession. The writ was denied by the trial court, and this court affirmed the judgment, holding that if it be assumed that the superintendent had the power to remove the district officer and appoint a successor, it was clear that such removal could be made only for the causes mentioned in the statutes, and for the reason that it was not shown that such order of removal was so made, the judgment of the trial court was affirmed.

In the case of Alberty v. Parks, District Judge. et al., 128 Okla. 178, 261 Pac. 940, certain parties brought an action in the district court of Adair county to remove two members of a school board, and asked that the court enter an order restraining the members from exercising any duties as such until the further order of the court. The members then filed an original action in this court for a writ of prohibition against the district judge of Adair county and the complainants in the first action, prohibiting and restraining them from proceeding and assuming jurisdiction in the action. It is to be observed from the opinion that the only question directly presented to this court was whether the member of a school board could be removed in a direct action brought in the district court for that purpose by private citizens, and while the court does call attention to other sections of the statutes under which it is suggested how school officers may be removed, sections 10353 and 10372 are nowhere considered in the opinion, and there is nothing to indicate that this court would not hold that the two latter sections furnish a cumulative remedy for the removal of school district officers.

It will be seen from the first two mentioned cases that this court by implication can reasonably be said to have approved the jurisdiction of the superintendent to remove a school board member under section 10353, supra; and that in the last case, not being squarely faced with the question we have here, what the court there said as to the method of removal would not exclude the authority of the superintendent to remove the member in the manner done in this case as an additional method.

Section 10353, supra, comes to us from the Code of the state of Kansas, and we find the first discussion of the statute by the Supreme Court of that state in the case of Jacques v. Litle, 51 Kan. 300, 33 Pac. 106, 20 L. R. A. 305. In that case Litle was the treasurer member of a school board, and the county superintendent concluded that Litle was neglecting the duties of his office and considering that he had forfeited his right to it, without notice to Litle, he declared the office vacant and appointed Jacques his successor to fill the supposed vacancy. Jacques qualified as treasurer and made demand of Litle for the books, papers, and belongings of the office, which were refused by Litle, whereupon Jacques sought mandamus to compel their delivery. The court reviewed the statute under which the superintendent evidently acted; said that there was some difference of opinion among the members of the court as to whether the superintendent had the power to inquire into the existence of grounds of forfeiture of the office and removal of the member, and would not decide that questi n. holding, in effect, that if such power existed Litle had not been legally removed. and states the rule therefor in the syl'abus as follows:

"A person elected, and who has entered upon the discharge of his duties as a school district officer, cannot be deprived of his office upon the ground that he has neglected or refused to perform any duty required of him, without notice. and a hearing before some competent officer or tribunal; and, un-

til a forfeiture of his right to the office has been ascertained and declared, the county superintendent has no authority to appoint another person in his stead."

In the next Kansas case, State. v. Stewart, 90 Kan.. 778, 135 Pac. 1182, we find the Attorney General brought quo warranto proceedings to remove Stewart from the office of treasurer of a school district. It appears that Stewart had been elected for a term, to which he had qualified, and had been re-elected. At the expiration of his first term he had failed to make bond as required by the school law of that state, but continued to exercise the duties of the office for about one year, when the action was brought against him. It seems that no order was made by the county superintendent or any other tribunal ousting him from the office, and in the opinion the court calls attention to the case of Jacques v. Little, supra. wherein it was held that before a forfeiture of the office could be declared, or a successor appointed, notice must be served upon the officer and a hearing had; that the violation of the statutes by the officer did not ipso facto create a vacancy in the office, but this could be done by the proper tribunal after notice and hearing; and on this question the court in its syllabus said:

"The failure without sufficient cause of a school treasurer for more than 20 days after his election to qualify forfeits his right to the office. but does not create a vacancy. This can be declared by the county superintendent or some court of competent jurisdiction only after notice and hearing or an opportunity to be heard."

It now appears that in the two foregoing Kansas cases the court, in the first case, declines to pass upon the right of the superintendent to remove the officer, and in the latter case assumes that such power does exist in the superintendent after notice to the officer and hearing.

The Supreme Court of Kansas next considers the question, and we think squarely decided it in the case of State v. Renker. 110 Kan. 133, 202 Pac. 606. In that case the state brought an action against Renker to oust him from the office of district school treasurer. Judgment in the trial court went for the defendant, and on appeal the court said:

"The state appeals from a judgment in which ouster of a school district treasurer for alleged misconduct in office and neglect of official duty was denied.

"The action was sought to be maintained under the ouster law of 1911 (Gen Stat. 1915, secs. 7603-7618), which provides for the removal of unfaithful public officers and outlines a procedure therefor. This act (section 7603) provides that:

" 'Every person holding any office of trust or profit, under and by virtue of any of the laws of the state of Kansas, either state, district, county, township, or city office, who shall willfully misconduct himself in office, or who shall willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state of Kansas, etc., shall forfeit his office and shall be ousted therefrom in the manner prescribed by the statute.

"This statute specifies the officers subject to forfeiture under its provisions. Expressio unius est alterius exclusio. It does not specify a school district office, for the very good reason that there is another effective and summary method provided by law for getting rid of a derelict school district officer. Section 8952, Gen. Stat. 1915, provides:

" 'Every person duly elected to the office of director, clerk, or treasurer of any school district, who * * * having entered upon the duties of his office shall neglect or refuse to perform any duty required of him by the provisions of this act, shall thereby forfeit his right to the office to which he was elected or appointed, and the county superintendent shall thereupon appoint a suitable person in his stead.'

"For the removal of * * * a negligent or unfaithful school district treasurer, the elaborate machinery prescribed by the ouster law of 1911 is unnecessary. Upon due notice and a fair hearing, the county superintendent has power to determine whether the facts exist which by legislative declaration create a forfeiture of the office of a school district treasurer. State ex rel. v. Stewart, 90 Kan. 778, 781, 135 Pac. 1182. True, the case just cited, as well as an earlier case (Jacques v. Litle, 51 Kan. 300, 33 Pa.c 106, 20 L. R. A. 304), recognizes that the question of forfeiture of a school district office, and of the removal of an incumbent who has forfeited his right thereto, is a justiciable controversy; but this is apart from the act of 1911 under which this action is attempted to be maintained."

The material part of section 10353, supra, is quoted as section 8952, in the Kansas statute, in State v. Renker, supra, and need not here be repeated. And that part of section 10372 necessary to a consideration of the question here involved is as follows:

Section 10372. "* * * The district board shall visit together or by one or two of their number, all of the schools of their respective districts, at least twice each term, and to such school periods during the term as, in their opinion, the ex-

igencies of each school may require; at which visit they shall examine the register of the teacher and see that it is properly kept, and inquire into the matters touching the schoolhouse facilities for ventilation, furniture, apparatus, library, studies, discipline, modes of teaching and improvement of the school, and confer with the teacher with regard to the condition and management, and make such suggestions as would, in their view, promote the interest and efficiency of the school and the progress and good of the pupils. The date and results of such visits shall be entered by the clerk of the board on their minutes; in case of failure of said board to perform said duty, the county superintendent of public instruction shall declare such office or offices vacant, and shall proceed to fill said vacancy or vacancies according to law."

Article 8, sec. 2, of the Constitution of this state provides:

"All elective officers, not liable to impeachment shall be subject to removal from office in such manner and for such causes as may be provided by law."

And in Throop on Public Officers, in a discussion of the cause and method for removal of officers, we find the following:

Section 345. "As we have shown in a previous chapter, in this country, an office is not regarded as property, nor has the officer any vested rights therein, which are within the protection of the United States Constitution, or the general provision of a state Constitution, forbidding legislative interference with property or vested rights. It follows that the power of the Legislature, in this respect, is practically unlimited, except where it is limited by provisions of the Constitution, having express or implied reference to this particular subject."

And as also announcing the foregoing doctrine: Mechem on Public Officers, section 447. The rule above stated applies as well to members of school district boards. 25 Cyc. 890.

Mechem also states this further wholesome general rule:

Sec. 452. "But the power of removal so conferred must be confined within the limits prescribed for it, and must be pursued with strictness. Hence it can be exercised only for the cause specified and in the manner and upon the conditions fixed. And authority to remove for cause cannot be construed as an implied authority to remove at pleasure."

The rules of procedure to be followed by the removing power are set out in section 454 as follows:

"In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing.

"But, on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority **that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense."** (Emphasis ours.)

In 22 R. C. L. p. 574, we find this:

"Although in a few jurisdictions it is held that a public officer holding for a fixed term, subject to removal for cause, may be removed without notice and hearing, the overwhelming weight of authority is that whenever a public officer holds for a definite term, he is entitled to notice and a hearing in order that he may have an opportunity to defend. It does not matter that the law conferring authority to make such removal does not expressly provide for such notice, for the mere silence of the statute with respect to notice and hearing will not justify the removal of an officer whose term or tenure is declared by law, without knowledge of the charge and an opportunity to be heard."

And we find in the case of Ridgeway v. City of Fort Worth et al., 243 S. W. 740, the Court of Civil Appeals of Texas discussed the necessary procedure to be followed in the removal of an officer where the law did not in terms fix the method, and the court in its syllabus laid down these general rules:

"A public officer, holding for a fixed term subject to removal for cause, is entitled to notice and hearing, in order that he may have opportunity to defend, notwithstanding the law conferring authority to remove does not expressly provide for notice."

"Where power is granted by statute or Constitution to remove a public officer for certain specified causes, the power of removal is limited to the causes specified."

"The grant of power given to remove a public officer, without provision for its effectuation, carries, as incidents to the grant, all means necessary to effectuate the power."

And it is held that the rules of procedure herein announced should be followed in the removal of the officers of a district school board. 35 Cyc. 893.

It is our conclusion that sections 10353

and 10372, supra, give to the county superintendent of public instruction the power to hear and determine the question as to whether a member of the school board has failed or refused to perform the duties required of him by either of said sections; and if it be found from the evidence that he has, then to make a declaration of forfeiture, declare the office vacant, and appoint a successor. But we further hold that, before the member can be removed under either of said sections, charges must be filed with the superintendent by some interested party, or by the superintendent, that due notice of the hearing thereon be given the member, and that he have full opportunity to be heard and present his defense.

It appearing to this court from the record in this case that the proceedings had before the superintendent in removing the director were in accordance with the principles of law as herein announced, it follows that the district court erred in its holding. and that the case should be reversed and remanded, with directions to set aside its former judgment and dismiss the writ. It is so ordered.

BENNETT, TEEHEE, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.